L. W. Seabrook v. Commissioner.
L. W. Seabrook v. Commissioner
Docket No. 9927.
United States Tax Court
1947 Tax Ct. Memo LEXIS 20; 6 T.C.M. (CCH) 1273; T.C.M. (RIA) 47323; December 12, 1947
*20 Respondent determined a deficiency in petitioner's income tax for the fiscal year ended June 30, 1944 in the amount of $54,610.31. The deficiency is based on respondent's determination that the income of a claimed partnership composed of petitioner, his son and daughter was taxable in its entirety to petitioner and not, as contended by petitioner, in allocable parts to the three designated partners. The partnership is purported to have been formed July 1, 1942, the date of the execution of bills of sale by petitioner to his daughter and son of an interest to each in a hardware business owned and operated as a sole proprietorship by petitioner. A partnership agreement relating back to July 1, 1942 was executed by petitioner and his two named children in August, 1943. Neither of the children contributed capital originating with them to the claimed partnership nor contributed substantially to the control and management of the business or performed vital additional services therein at any time from July 1, 1942 through the taxable year involved. Held, that within the meaning of the Federal income tax statutes the claimed partnership did not exist during the period above named, and that *21 the deficiency determined against petitioner should be sustained. Robert Ash, Esq., Munsey Bldg., Washington 4, D.C., Carl F. Bauersfeld, Esq., and James D. A. Holley, C.P.A., Tampa Theater Bldg., Tampa, Fla., for the petitioner. F. L. Van Haafton, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined a deficiency in petitioner's income tax for the year ending June 30, 1944, in the amount of $54,610.31. The deficiency results from adjustments affecting the income of the fiscal years ending June 30, 1943 and 1944. Due to the forgiveness feature applicable to these years the deficiency relates only to the latter year. The question involves the validity for income tax purposes of a family partnership. The returns were filed with the collector of internal revenue for the district of Florida at Jacksonville. Findings of Fact Petitioner is an individual residing in Tallahassee, Florida. Petitioner has two children, a son, William Whitmarsh Seabrook, born July 8, 1920, and a daughter, Inez Seabrook Davenport, born July 19, 1918. Petitioner has been in the hardware business since 1919. From 1927 and at least *22 until 1942, petitioner conducted the hardware business as sole proprietor under the name of Seabrook Hardware Company. From about 1928 petitioner has had an associate by the name of C. E. Patterson who for some time and during the taxable years acted as general manager and office supervisor. Patterson did most of the hiring and firing. He received a salary of $125 a month plus 25 per cent of net profits after taxes. The net income of the Company which was reported by petitioner as part of his taxable income, petitioner's net income and his income tax liability for the years indicated, were as follows: Year
Income
Ended
from
Total Net
Tax
June 30
Company
Income
Liability
1938
$ 7,806.33
$ 7,806.33
$ 220.50
1939
11,336.29
11,592.57
557.25
1940
16,286.92
17,185.09
1,141.06
1941
16,176.84
16,575.80
1,518.14
1942
24,287.26
25,198.34
6,807.04
Petitioner's daughter, Inez, attended local schools in Tallahassee. She graduated from Florida State College for Women in 1938. During school and college she frequently helped at her father's store in her spare time. She did mostly office work, such as getting out bills, posting book entries, and *23 preparing payrolls. She also made suggestions concerning household items sold by the store which would be of particular interest to women. In the fall of 1938 she attended the New York University School of Retailing in New York City on a scholarship. The course combined class work with practical experience in department stores. Inez attended this school until December 1938 and then returned to Tallahassee because she did not consider the course as of any value to her. After returning to Tallahassee she attended the Lively Vocational School where she learned typing. This schooling took a few hours a day and the remainder of her time she worked in the store doing office work. She was paid a salary for this work. Inez married James Davenport in December 1940. Davenport entered military service in February 1941 and was assigned to Camp Stewart, Georgia, where Inez joined him. Davenport went overseas in February, 1942. After his departure overseas Inez returned to her parents' home in Tallahassee where she gave birth to a child. After her marriage to Davenport, Inez had little or no time for the hardware business. Petitioner's son, Whitmarsh, attended local schools in Tallahassee. In *24 1938 he entered The Citadel, in Charleston, South Carolina. While there he studied civil engineering. He was graduated May 30, 1942, and was married the same day, returning shortly thereafter to Tallahassee. From July 1, 1942, the date of the execution of the bill of sale as hereinafter described, to July 14, 1942, Whitmarsh was active in the business of the company. The nature of such services, however, is not disclosed by the evidence. He was commissioned a lieutenant in the Army five or six days after graduation and went on active duty July 14, 1942, being assigned to Fort Belvoir, Virginia. In anticipation of shipment overseas and in compliance with routine Army suggestion, Whitmarsh executed, on August 14, 1942, a power of attorney at Camp Edwards, Massachusetts, authorizing his father to act for him. Whitmarsh went overseas in January 1943 with a construction battalion. By written instrument dated July 1, 1942, petitioner, as vendor, and in consideration of love and affection and $1 "sold" his son a one-fourth interest, valued at $20,000, in the company, which interest was more particularly described as: "All goods, wares, stock, merchandise, hardware, iron and steel products, *25 tractors, trucks, grading implements, and all farm implements, all accounts receivable of the said Vendor under the trade name of Seabrook Hardware Company, the store property where Seabrook Hardware Company is now located and the railroad warehouse property." By an essentially similar instrument petitioner also "sold" his daughter a one-fourth interest in the Company's business valued at $24,000. Prior to July 1, 1942, neither Inez nor Whitmarsh had any assets of their own. The balance sheet of the company as of June 30, 1942, showed current assets of $126,066.02, current liabilities of $50,270.12, fixed assets of $30,690.83, fixed liabilities of $9,684.40, or total assets of $156,756.85 as against total liabilities of $59,954.52, indicating a total net worth of $96,802.33. On March 15, 1943, petitioner filed a gift tax return for the calendar year 1942 which disclosed the following: Claimed value of one-fourth interest
in Seabrook Hardware Company to
W. W. Seabrook
$24,000.00
Claimed value of one-fourth interest
in Seabrook Hardware Company to
Inez Seabrook Davenport
24,000.00
Total value claimed gifts
$48,000.00
Less: Two exclusions $4,000
each donee
$ 8,000.00
Specific exemption
claimed
40,000.00
48,000.00
Taxable gifts
None
*26 Petitioner had led his children to believe from their early youth that he would give them an interest in the business. He considered July 1, 1942, as an appropriate time to give them such an interest. Whitmarsh, a month earlier, had graduated from college and had married. He had recently been commissioned as an Army officer and was awaiting assignment to active duty which occurred July 14, 1942. Davenport, the husband of Inez, had gone overseas in February 1942 and Inez had recently had or was to have a child. Petitioner wanted his son and his son's wife to know that he, the son, would have something to come back to after the war. Similarly petitioner wanted his daughter to know that her husband, Davenport, would, through her interest in the business, also have something to come back to after the war. It was for these reasons that petitioner timed the instruments as he did. Petitioner and his two children executed a written instrument designated as a "partnership agreement," dated August 3, 1943. This agreement recited that petitioner had transferred a one-fourth interest in the business to each child on July 1, 1942, and that all the parties were desirous of now forming a partnership *27 as of that date to be styled "Seabrook Hardware Company." The agreement stated that the capital of the partnership was to be owned 50 per cent by petitioner and 25 per cent each by Inez and Whitmarsh. Net profits and losses were to be shared on the same percentage basis. The capital of the partnership was stated to be $96,000, contributed as follows: $48,000 by petitioner and $48,000 equally by the two children. The agreement authorized all the designated partners to draw checks in the firm's name. Petitioner was understood and agreed to be the general manager of the business. The firm was to continue until dissolved. Whitmarsh signed the agreement at Fort Belvoir. Inez and petitioner signed it at Tallahassee. The delay in time between the instruments dated July 1, 1942, and the instrument designated "partnership agreement" dated August 3, 1943, was in part due to Whitmarsh's absence from Tallahassee and the fact that Inez was in ill health. The reasons petitioner had the instrument designated "partnership agreement" executed were essentially the same as those for executing the instruments dated July 1, 1942. None of these instruments was recorded. Notification of the execution of *28 the August 3 instrument was given to the bank for signature purposes and to those creditors who required such information. No general notification was given. From July 1, 1942 through the taxable year here involved the business was conducted and operated as it had been theretofore under the sole proprietorship of petitioner. Whitmarsh had worked in the hardware store almost all his life. During his school days he worked after school, weekends and vacations. He waited on customers, attempted to control stock and inventories. He became familiar with the business and displayed a real aptitude for it. He studied civil engineering at college because he and his father thought it would be helpful to him in the hardware business, which included the sale of heavy building materials and equipment and frequently, by request of purchasers, estimates of the kind, quantity and durable strength of such material and equipment requisite for specified construction projects. Whitmarsh returned to Tallahassee on terminal leave from the Army in October 1945 and was discharged November 13, 1945. After his return he immediately entered into the business acting as buyer and floor manager. He received a *29 salary of $75 a week. Davenport was discharged from the service in July 1945. At this time he began work for the company. He started on a salary of $50 a week. He was in charge of the warehouse, the repair shop and the heavy equipment end of the business. Davenport had a degree from the Georgia School of Technology in electrical engineering and this training was useful to the business. The following schedule shows the income credited to petitioner's and the children's accounts and their withdrawals for the years indicated: Fiscal Year Ended June 30, 1943
Income
With-
Credited
drawals
L. W. Seabrook
$57,968.29
$46,129.71
W. Whitmarsh Seabrook
28,984.14
2,076.13
Inez Seabrook Davenport
28,984.15
974.39
Fiscal Year Ended June 30, 1944
L. W. Seabrook
$38,722.42
$46,610.80
W. Whitmarsh Seabrook
19,361.22
* 6,832.10
Inez Seabrook Davenport
19,361.22
** 11,719.61
For the fiscal year ended June 30, 1943, the partnership *30 filed a partnership return reporting ordinary net income in the amount of $115,936.58. The distributive shares of this income were stated to be $57,968.29 to petitioner, $28,984.14 to Whitmarsh and $28,984.15 to Inez. These amounts were reported by these individuals in their returns. For the fiscal year ended June 30, 1944, the partnership reported ordinary net income in the amount of $77,632.89. The distributive shares of this income were stated to be $38,816.45 to petitioner and $19,408.22 each to the two children. These amounts were reported by these individuals in their returns. Respondent, in his deficiency determination, increased petitioner's income for the fiscal years ended June 30, 1943 and 1944, by the amounts reported by petitioner's children in those years from the partnership business. In explanation of his determination, respondent stated: "It is held that the entire net income of the business conducted by you under the name of Seabrook Hardware Company is taxable to you." Opinion The question is whether a bona fide partnership for Federal tax purposes existed between petitioner and his two children during the fiscal years ended June 30, 1943 and June 30, 1944. We *31 think the answer must be in the negative. In considering whether or not there is a bona fide partnership for Federal tax purposes the facts must be examined to determine if any, or all, of the following circumstances are present: (1) Whether there is an investment of capital originating with the purported partners; (2) Whether they substantially contributed to the control and management of the business; or (3) Whether they performed vital additional services. See ; ; . It is clear from the facts in the instant case that the children contributed no capital originating with them. The bona fides of the children's status as partners during the years in question, therefore, depends upon proof that they either substantially shared in the control and management of the business or that they performed vital additional services. With respect to the son, Whitmarsh, the years in question cover the period commencing July 1, 1942, the date of the execution of the bill of sale purporting to give him a one-fourth interest in the company, and ending June 30, 1944. On *32 July 14, 1942, Whitmarsh entered active military duty. Since that time and during the years in question he performed no services of any kind for the Company. His status as a bona fide partner, therefore, is dependent upon proof that he either shared substantially in the control and management of the company or performed vital additional services during the period from July 1 to July 14, 1942. The son stated, after being asked whether he received his commission in the Army immediately following his graduation from The Citadel on May 30, 1942, as follows: "No, sir; I wasn't commissioned - I believe I was commissioned six days after that, sir, five or six days after that before my commission reached me. Then, as I recall, I came back down to Tallahassee. That's when we formed the partnership agreement. And I stayed here in the business, I believe, for about two weeks, mighty close to that, then went to Fort Belvoir and that was on active service, active duty." [1]
*33 It will be noted from this testimony that Whitmarsh was active in the affairs of the company during the brief space of time between the purported creation of the partnership and his entrance upon active service. There is no indication in it, however, as to the nature of these services during this time. After Whitmarsh testified that he had been in the service of the company only a few days subsequent to the time the partnership was purported to have been formed on July 1, 1942, the Court stated as follows: "THE COURT: Well, that doesn't tell us very much. What did you do? What did you do that caused you to say that you acted as a partner in the business? What do you mean by that? "THE WITNESS: Previous to the time that this partnership was drawn up, I acted as a partner, assumed responsibility as a partner, signed checks as a partner, before the partnership was ever drawn up, sir, and I continued to do those things during that period as this transformation took place; in other words, it wasn't a cut-and-dried step from one day to the other; it was - I was only there, of course, a short period after it was signed and there was no outstanding change, of course, during those few *34 days. But - I can't remember any specific instance, but I certainly assumed the responsibility as a partner and attempted to do what was necessary in the business." It will be noted that Whitmarsh stated that he acted as a partner, that he assumed responsibility as a partner and that he signed checks as a partner. These self-serving declarations made by the son, aside from being, in the main, statements of legal conclusions, have no factual basis in the evidence that he contributed to the management and control of the company. On the contrary, the testimony of C. E. Patterson, office manager for the company, clearly shows that during the years in question his orders came directly from the petitioner and that at no time during the fiscal years 1942, 1943 and 1944 was there any change in the management and control of the company. The son's status as a bona fide partner, then, depends upon the proof of his contribution of vital additional services. The only specific performance of services shown in the record, in addition to the broad statement that he assumed the responsibility of a partner, is the son's statement "I * * * signed checks as a partner". The nature of the services performed *35 by the person purporting to be a partner must constitute a substantial factor in the production of the income of the business. See . Reversed on a determinative issue not here involved Fed. (2d) , decided November 24, 1947. The signing of checks alone does not come within this definition, nor is the general uncorroborated statement that he assumed the responsibility of a partner sufficient to sustain a contention that he performed vital additional services. It is also clear that the daughter, Inez, neither contributed substantially to the control and management of the business nor rendered vital additional services during the taxable years. She was married and her husband was overseas. She had a baby to care for. When asked if Inez worked in the business during the taxable years, petitioner stated: "A. She worked some; sometimes we got in a tight, she'd come in there and help us, maybe, but her hands were full with other things. * * *
"Q. So that she was busy with the family, rather than working in the business those two years? "A. Yes, Sir." In conclusion, then, we have here an attempt by the petitioner to make his children *36 partners in an enterprise which he has, over a period of years, built into a prosperous business. This is, of course, both a natural and a commendable desire. However, since petitioner has failed to prove the existence of the circumstances heretofore outlined, we conclude that the facts do not support the contention that there was a bona fide joining together for the purpose of carrying on a partnership business during the years in question. It follows that respondent's determination must be sustained. Decision will be entered for respondent. Footnotes
*. Of the withdrawals $6,142.98 was for the purchase of United States Bonds subsequently used for payment of Federal income taxes. ↩
**. Of the withdrawals $11,491.24 was for payment of Federal income taxes.↩
1. He later corrected this statement to show that he returned to Tallahassee shortly after June 1, 1942, and remained there until July 14, 1942. He stated: "In my mind I left out the month of June and I was home during that time."↩